1
2
3
4
5
6
7

**O**

# United States District Court
# Central District of California

8
9
10

11   KINSLEY TECHNOLOGY CO.,

12                          Plaintiff,

13         v.

14   YA YA CREATIONS, INC., et al.,

15                          Defendants.

16

Case № 2:20-cv-04310-ODW (KSx)

**ORDER GRANTING IN PART AND DEFERRING IN PART PLAINTIFF'S RENEWED MOTION FOR DEFAULT JUDGMENT [194]**

17              **I.      INTRODUCTION**

18         Plaintiff Kinsley Technology Co. sells disposable surgical facemasks on

19   Amazon.com under its federally registered "SUNCOO" trademark.  It sued numerous

20   third-party sellers and Amazon.com, Inc. ("Amazon") for trademark infringement

21   committed in connection with the sale of counterfeit SUNCOO masks on Amazon's

22   online marketplace.  Kinsley now moves for entry of default judgment against the sole

23   remaining Defendant in this action, National Supply Distributors ("National").

24   (Renewed Mot. Default J. ("Motion" or "Mot."), ECF No. 194-1.)  Having carefully

25   considered the papers filed in connection with the Motion, the Court deemed the

26   matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal.

27   L.R. 7-15.  For the reasons discussed below, the Court **GRANTS IN PART** and

28   **DENIES IN PART** Kinsley's Motion, finding National is liable to Kinsley, but

finding Kinsley fails in its burden of proving damages.

## II.      BACKGROUND

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).  The well-pleaded factual allegations in the operative First Amended Complaint ("FAC") are as follows.

Kinsley is the owner of U.S. Trademark Registration No. 5,627,817 for the wordmark SUNCOO in international class 010 (medical apparatus).  (FAC ¶ 34, ECF No. 31.)  Kinsley and its sole importer/distributor, who is based in California, use the SUNCOO wordmark in connection with the sale of their disposable facemasks.  (*Id.* ¶ 37.)

The primary sales channel Kinsley uses is the Amazon Marketplace at www.amazon.com.  (*Id.* ¶ 40.)  Amazon allows sellers to list their products on the Amazon Marketplace, and the sellers pay Amazon a fee to store and maintain the products in its warehouses and eventually ship them to customers.  (*Id.* ¶¶ 43–45.)  Kinsley and its importer/distributor have utilized this program to offer its SUNCOO-branded facemasks on the Amazon Marketplace.  (*Id.* ¶ 47.)

Amazon assigns each third-party product sold on the Amazon Marketplace, such as Kinsley's facemasks, an Amazon Standard Identification Number ("ASIN").  (*Id.* ¶¶ 49–51.)  Every product sold on the Amazon Marketplace has an ASIN associated with it, and without an ASIN, a product cannot be listed or sold on the Amazon Marketplace.  (*Id.*)

Amazon assigned Kinsley's SUNCOO-branded facemasks an ASIN, and Kinsley used this ASIN to create an associated product page for its facemasks.  (*See Id.* ¶¶ 53, 55.)  Because only Kinsley and its importer/distributor sell genuine SUNCOO-branded facemasks, Kinsley intended that only its facemasks, and no one

else's, should appear as products for sale on its product page. (*See id.* ¶ 56.) Nevertheless, National obtained Kinsley's ASIN and used it to sell counterfeit facemasks (that is, facemasks not manufactured by Kinsley) through Kinsley's product page. (*Id.* ¶¶ 70–71.) Thus, customers purchasing facemasks through Kinsley's product page for SUNCOO-branded facemasks could place an order and receive facemasks not manufactured by Kinsley, in either unbranded packaging or counterfeit packaging. (*Id.* ¶¶ 60, 68–70; *see* Order Granting Mot. Prelim. Inj. 3–4, ECF No. 147.)

On May 12, 2020, Kinsley initiated this action, asserting four claims: (1) trademark infringement (15 U.S.C. § 1114); (2) trademark counterfeiting (15 U.S.C. § 1114); (3) unfair competition under federal law (15 U.S.C. § 1125(a)); and (4) unfair competition under California state law (Cal. Bus. & Prof. Code §§ 17200–17210). Initially, Kinsley asserted these claims against all Defendants. Some Defendants have since settled with Kinsley, and Kinsley eventually dismissed every Defendant in this case other than National.

National has not appeared in this action. On February 26, 2021, the Clerk entered National's default based on its failure to respond to the FAC. (Default National, ECF No. 125.) Kinsley now moves for entry of default judgment against National. (*See* Mot.) Kinsley also applies to file under seal Exhibit D, an exhibit it relies on for damages calculations. (Pl.'s Appl. Leave File Under Seal, ECF No. 195.)

### III.     LEGAL STANDARD

Federal Rule of Civil Procedure 55(b) authorizes a district court to grant default judgment against a defendant who fails to respond to a complaint following an entry of default. Fed. R. Civ. P. 55(b)(2). Before a court can grant default judgment against a defendant, the plaintiff must satisfy the procedural requirements set forth in Central District Local Rule 55-1. This rule requires that the plaintiff submit a declaration establishing (a) when and against which party default was entered; (b) identification of the pleading to which default was entered; (c) whether the defaulting party is a minor

or incompetent person; (d) that the Servicemembers Civil Relief Act, 50 U.S.C. § 3931, does not apply; and (e) that the defaulting party was properly served with notice, if required under Rule 55(b)(2).  C.D. Cal. L.R. 55-1.

Once the procedural requirements are satisfied, a district court has discretion to award default judgment.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment."  *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002).  The Ninth Circuit has set forth factors district courts are to consider when reviewing a motion for default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the defendant's default was due to excusable neglect; and (7) the strong policy favoring decisions on the merits (the "*Eitel* factors").  *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

## IV.   DISCUSSION

The Court considers, in turn, whether (A) Kinsley meets the procedural requirements for default judgment, (B) the *Eitel* factors support the entry of default judgment, and (C) the relief requested, including the specific amount of damages sought, is warranted.

### A.   Procedural Requirements

Kinsley satisfies the procedural requirements for entry of default judgment against National.  On February 26, 2021, the Clerk entered default against National based on its lack of response to the FAC.  (Default National, ECF No. 125.)  National is a corporation and is therefore not a minor, an incompetent person, or a servicemember, and the declaration of Kinsley's counsel confirms as much.  (Decl. Nicholas S. Lee ¶¶ 4–5, ECF No. 194-2.)  Moreover, notice under Rule 55(b)(2) is not required because National has not appeared.  Therefore, the procedural requirements for default judgment are satisfied.

Additionally, this Court has personal jurisdiction over National.   "[B]efore entering a default judgment, a court must consider whether it has personal jurisdiction over the defaulting defendant . . . ."   *Zheng v. Li*, No. CV 18-8387 PA (JEMx), 2019 WL 1670751, at *2 (C.D. Cal. Mar. 1, 2019).   Federal courts have the power to exercise personal jurisdiction to the extent permitted by the laws of the states in which they sit.   Fed. R. Civ. P. 4(k)(1)(A).   In California, as everywhere, "[w]ith respect to a corporation, the place of incorporation and principal place of business are 'paradigm bases' for a court's exercise of personal jurisdiction."   *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (cleaned up).

Here, Kinsley alleges that National is a "dba of" NPR Biomedical, a "company of unknown incorporation" with a principal place of business in Brea, California. (FAC ¶ 19.)   Kinsley provides a specific address where NPR Biomedical operates. (*Id.*)   The Court accepts these uncontested allegations as true for purposes of determining whether it has personal jurisdiction over National.   *Heidenthal*, 826 F.2d at 917–18.

The dba or "'doing business as' designation is used as a way of associating a trade name with a corporation where the trade name is a fictitious name that does not have a separate legal existence independent of the corporation it describes."   *Luster v. First Fin. Asset Mgmt., Inc.*, No. 1:20-cv-03505-SDG-JKL, 2021 WL 8268129, at *3 (N.D. Ga. 2021); *see Mytee Prod., Inc. v. H.D. Prod., Inc.*, No. 05CV2286 R (CAB), 2007 WL 1813765, at *3 (S.D. Cal. June 22, 2007) ("The business name is a fiction and so too is any implication that the business is a legal entity separate from its owner.").   Therefore, Kinsley's allegation that National is doing business as NPR Biomedical (or perhaps vice versa), coupled with Kinsley's specific allegations that Biomedical's principal place of business is in California, are sufficient as allegations that National's principal place of business is in California.   Moreover, Kinsley's allegation that NPR or National is a "company of unknown incorporation" is sufficient, for the purpose of default judgment, to conclude that NPR or National is a

corporation.  Thus, this Court has personal jurisdiction over National.

**B.    *Eitel* Factors**

The Court finds that the *Eitel* factors favor entry of default judgment against National on Kinsley's claims.

### 1.  Possibility of Prejudice to the Plaintiff

First, courts consider whether the plaintiff will suffer prejudice if the court does not grant default judgment.  *Eitel*, 782 F.2d at 1471.  Denial of default results in prejudice when it leaves the plaintiff without a remedy or recourse to recover damages or other compensation.  *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010) (citing *PepsiCo*, 238 F. Supp. 2d at 1177).  Here, National has failed to appear or participate in this action despite proper notice.  Therefore, Kinsley has no recourse other than default judgment to stop National's infringement and to recover for the harm National caused.

### 2.  Substantive Merits and Sufficiency of the FAC

Pursuant to the second and third *Eitel* factors, courts evaluate the substantive merits of the movant's claims and the sufficiency of the pleadings.  *PepsiCo*, 238 F. Supp. 2d at 1177.

To succeed on a trademark infringement claim, a plaintiff "must prove that: (1) it has a protectable ownership interest in the mark; and (2) the defendant's use of the mark is likely to cause consumer confusion."  *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011); *see* 15 U.S.C. § 1114.  The Ninth Circuit has acknowledged that claims for trademark infringement, unfair competition under federal law, and unfair competition under California law are all "subject to the same legal standards."  *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1221 (9th Cir. 2012).  Further, for the purpose of this analysis, the elements of trademark infringement and trademark counterfeiting are the same: "[w]hen an original mark is attached to a product in such a way as to deceive the public, the product itself becomes a 'counterfeit' just as it would if an imitation of the

mark were attached." *Westinghouse Elec. Corp. v. Gen. Cir. Breaker & Elec. Supply, Inc.*, 106 F.3d 894, 900 (9th Cir. 1997).   The Court therefore analyzes Kinsley's trademark infringement, trademark counterfeiting, federal unfair competition, and state unfair competition claims together, under the framework for federal trademark infringement under the Lanham Act.  *See* 15 U.S.C. § 1114.

### a.  Protectable Ownership Interest

Kinsley holds a valid trademark registration for the wordmark SUNCOO. (FAC ¶ 34.)  Trademark registration constitutes "prima facie evidence of the validity of the registered mark."  15 U.S.C. § 1115(a).  Therefore, Kinsis has established that it holds a protectable interest in the SUNCOO wordmark.

### b.  Consumer Confusion

The test for whether a trademark has been infringed is "whether an alleged trademark infringer's use of a mark creates a likelihood that the consuming public will be confused as to who makes what product." *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008).  The Ninth Circuit "developed eight factors, the so-called *Sleekcraft* factors, to guide the determination of a likelihood of confusion." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000); *see AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979).  Courts are to apply the *Sleekcraft* factors flexibly; the "factors are intended as an adaptable proxy for consumer confusion, not a rote checklist." *Network Automation*, 638 F.3d at 1145. "In the context of the Web in particular, the three most important *Sleekcraft* factors are (1) the similarity of the marks, (2) the relatedness of the goods or services, and (3) the 'simultaneous use of the Web as a marketing channel.'" *GoTo.com*, 202 F.3d at 1205 (quoting *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1057 n.16 (9th Cir. 1999)).

In this case, when a consumer navigates to the Amazon Marketplace page associated with Kinsley's ASIN and its SUNCOO-branded facemasks, the consumer sees the SUNCOO word mark along with Kinsley's branding, images, and

descriptions Kinsley created to sell its masks.  (FAC ¶ 73.)  This is the page that a customer would see and use when purchasing National's masks.  Thus, by using Kinsley's ASIN to offer its own masks, National effectively proffered non-SUNCOO masks under the SUNCOO word mark.  Moreover, as alleged, the masks arrived in unbranded or counterfeit packaging.  Under these circumstances, the infringing word mark is not merely similar to the protected mark; it is exactly the same.  Thus, the first factor militates heavily in favor of a likelihood of confusion.

The second factor does, too, and for largely the same reasons.  The goods National offered are not only related to Kinsley's goods; they are exactly the same, thereby compounding consumer confusion.  (*See* FAC ¶ 75.)  Finally, as to the third factor, both parties rely on the Web, and specifically, the Amazon Marketplace, as their primary marketing and sales channel.  (*Id.* ¶ 40.)

From a trademark perspective, National's actions are no less culpable than those of a fraudster who every Sunday breaks into a clothing store that is usually closed on Sundays, displays his own counterfeit garments on the shelves, and sells them to unsuspecting customers who visit the store throughout the day believing the store to be legitimately open and offering legitimate products.  Therefore, taking the allegations in the FAC as true, the *Sleekcraft* factors strongly suggest a likelihood of confusion.  *See Brookfield Commc'ns*, 174 F.3d at 1055–57.  Accordingly, the Court concludes that Kinsley has adequately pleaded and is likely to succeed on its claims for trademark infringement, trademark counterfeiting, federal unfair competition, and state unfair competition.

### 3.  The Sum of Money Damages at Stake

The fourth *Eitel* factor directs courts to balance the amount of money damages at stake with the "seriousness of Defendant's conduct."  *PepsiCo*, 238 F. Supp. 2d at 1176; *Eitel*, 782 F.2d at 1471.  This amount must be proportionate to the harm alleged.  *Landstar*, 725 F. Supp. 2d at 921.  "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in light of defendant's action."

*Troung Giang Corp. v. Twinstar Tea Corp.*, No. C 06-03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007).

Here, Kinsley seeks injunctive relief, $70,000 in damages, and attorneys' fees. (Mot. 13–22.) Kinsley claims that National received $22,954.82 in revenue from the sale of its counterfeit facemasks. (*Id.* at 17.) "In assessing profits the plaintiff shall be required to prove defendant's sales only." 15 U.S.C. § 1117(a). "[I]n a case involving use of a counterfeit mark . . . the court shall . . . enter judgment for three times such profits or damages . . . if the violation consists of intentionally using a mark . . . ." 15 U.S.C. § 1117(b).

Provided that the Court awards default judgment only after Kinsley properly supports its damages requests with evidence, the damages Kinsley seeks will be proportional to the harm National caused because the requested damages approximate thrice the actual damages, which is appropriate under the Lanham Act. *Id.* This factor therefore weighs in favor of default judgment.

### 4.  Remaining *Eitel* Factors

As to the remaining *Eitel* factors, *fifth*, nothing in the record suggests the possibility that National did not in fact infringe Kinsley's trademark as alleged. *Eitel*, 782 F.2d at 1471.

*Sixth*, nothing in the record suggests National's failure to appear is a result of excusable neglect. *Eitel*, 782 F.2d at 1472.

*Seventh*, and finally, "default judgments are ordinarily disfavored. Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472 (citing *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985)). However, National has failed to appear or otherwise respond, making "a decision on the merits impractical, if not impossible." *PepsiCo*, 238 F. Supp. 2d at 1177. Accordingly, this factor does not prevent the Court from granting judgment by default. *See Duralar Techs. LLC v. Plasma Coating Techs., Inc.*, 848 F. App'x 252, 255 (9th Cir. 2021) (affirming entry of default judgment when all factors except

this last one weighed in the plaintiff's favor).

In sum, the *Eitel* Factors weigh in favor of finding National liable to Kinsley by default.   Finding National liable, the Court proceeds to determine what relief is appropriate.

**C.    Requested Relief**

Kinsley seeks a permanent injunction against National, statutory damages, and attorneys' fees.  (FAC Prayer for Relief.)  For the following reasons, the Court grants a permanent injunction against National and orders Kinsley to file additional declarations and other evidence on the issue of damages.

**1.    Permanent Injunction**

Under the Lanham Act, a district court may grant an injunction in accordance with "principles of equity" and "upon such terms as the court may deem reasonable" to prevent further violations of the mark.  15 U.S.C. § 1116(a); *Phillip Morris USA, Inc. v. Castworld Prods.*, 219 F.R.D. 494, 502 (C.D. Cal. 2003); *PepsiCo*, 238 F. Supp. 2d at 1174.   Courts have granted permanent injunctions in cases where a defendant has failed to appear. *See  Phillip Morris*, 219 F.R.D. at 502; *PepsiCo, Inc.*, 238 F. Supp. 2d at 1178.

A party seeking injunctive relief must prove that (1) it has suffered irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction.  *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

Kinsley satisfies its burden for injunctive relief.  First, under the Trademark Modernization Act of 2020 as enacted at 15 U.S.C. § 1116(a), a plaintiff seeking an injunction to prevent trademark infringement is entitled to a rebuttable presumption of irreparable harm upon a finding of likelihood of success on the merits.  15 U.S.C. § 1116(a); *Cisco Sys., Inc. v. Wuhan Wolon Commc'n Tech. Co.*, No. 5:21-cv-04272-

EJD, 2021 WL 4962661, at *7 (N.D. Cal. July 23, 2021).   As discussed above, Kinsley's allegations and evidence strongly indicate that National infringed its trademark.   Thus, Kinsley establishes a likelihood of success on the merits, and under 15 U.S.C. § 1116(a), it is therefore entitled to a presumption that it is being irreparably harmed.

Third, the balance of hardships between Kinsley and National weighs in Kinsley's favor.   Absent an injunction, Kinsley will continue to lose profits and good will.   Conversely, an injunction would not prevent National selling any face masks anywhere; it would simply prevent it from selling (1) any face masks under Kinsley's ASIN, and (2) counterfeit masks bearing the SUNCOO word mark in any sales channel.   *See Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1084 (C.D. Cal. 2012).

Finally, "[i]n trademark infringement cases, the public interest is the right of the public not to be deceived or confused.   Where [a] defendant's concurrent use of [a] plaintiff's trademark without authorization is likely to cause confusion, the public interest is damaged by the defendant's use."   *Chalon Adventures, Inc. v. Fullerton Lounge, Inc.*, No. 8:18-cv-01565-JLS-ADS, 2019 WL 2896131, at *5 (C.D. Cal. Mar. 7, 2019) (internal citations and quotations omitted).   Here, National is using Kinsley's mark without Kinsley's authorization in a way that is very likely to confuse customers into believing they are purchasing Kinsley's masks when in fact they are purchasing National's masks.   Especially in the context of an ongoing public health crisis in which the public has an interest in the availability of effective, high-quality facemasks, it appears clear that the requested injunction serves public interest.

The Court thus finds that it is appropriate to permanently enjoin National from (1) selling or offering for sale any facemask under the ASIN associated with Kinsley's SUNCOO-branded facemasks, and (2) selling or offering for sale, through any sales channel of any type, any facemask whose packaging bears the SUNCOO word mark.

**2.      Statutory Damages**

"[A] default judgment must be supported by specific allegations as to the exact amount of damages asked for in the complaint." *Phillip Morris*, 219 F.R.D. at 499.  If the facts necessary to determine damages are not contained in the complaint, or are legally insufficient, they will not be established by default.  *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).  "The court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages."  Fed. R. Civ. P. 55(b)(2)(B).

"In a case involving the use of a counterfeit mark . . . the plaintiff may elect, at any time before final judgment . . . to recover, instead of actual damages . . . an award of statutory damages."  15 U.S.C. § 1117(c).  Moreover, "[i]n assessing profits the plaintiff shall be required to prove defendant's sales only."  *Id.* § 1117(a).

Kinsley seeks $70,000 in statutory damages.  (Mot. 16.)  "The requested amount of statutory damages is based on the volume of infringing sales as determined through discovery from . . . Amazon."  (*Id.*)  Kinsley submits evidence it claims establishes that National received "*at least* $22,954.82" in revenue from its sale of counterfeit facemasks. (*Id.* at 17.)

Kinsley alleges that National's infringement was intentional, (FAC ¶¶ 33, 125, 133)—and indeed, in this case, the allegations themselves strongly support intentionality because it is not plausible that National accidentally or innocently used another seller's product page to sell its own products.  Trebling Kinsley's claimed damages pursuant to 15 U.S.C. § 1117 would yield $68,864.46 in actual damages. (*Id.*)  Kinsley seeks $70,000 in statutory damages, an amount that approximates its actual damages. (*Id.*)

Having reviewed Kinsley's evidence, the Court finds that Kinsley fails in its burden of establishing the damages it seeks.  First, Kinsley has not properly authenticated any of its exhibits, and second, Exhibit D—Kinsley's key exhibit—is presented in an indecipherable form.

1         *a. Authentication of All Exhibits*

2        The Court cannot rely on any of the exhibits Kinsley submits in support of its

3     damages because Kinsley altogether fails to properly authenticate its exhibits. "To

4     satisfy the requirement of authenticating or identifying an item of evidence, the

5     proponent must produce evidence sufficient to support a finding that the item is what

6     the proponent claims it is." Fed. R. Evid. 901(a). In support of its Motion, Kinsley

7     filed Exhibits B, C, D, and E without any supporting or authenticating declaration.[1]

8     As Kinsley submits no additional evidence explaining the nature and origin of any of

9     the exhibits, Kinsley fails to authenticate them. *Id.* Accordingly, the Court is unable

10    to rely on them to determine damages.

11        *b. Inadequacy of Exhibit D*

12       Furthermore, Kinsley does not adequately explain the key exhibit: Exhibit D, a

13    111-page document Kinsley received from Amazon. Kinsley contends Exhibit

14    D proves (1) how many counterfeit boxes of facemasks National sold, (*see* Mot. 16),

15    and (2) how much revenue National received from sales of counterfeit products, (*see*

16    *id.* at 17).

17       Exhibit D fails to prove either of Kinsley's contentions. The exhibit is a

18    spreadsheet of an unknown quantity of rows and columns, printed out onto 8.5" x 11"

19    sheets of paper with little apparent context or purpose. There are columns upon

20    columns of repetitive, irrelevant, or indecipherable information, and the Court is

21    utterly unable to decipher where a given column or row begins or ends, much less the

22    nature of the information in a given column or row. This Court recently dealt with a

23    similar exhibit in a different case and noted that "[a] spreadsheet loses its practical

24    function when every column or row is printed on a separate page. Parties should not

25    submit puzzle pieces as exhibits and expect the Court to build a mosaic on the

26    courtroom walls to decipher whether [relief] should be granted." *Gibson v. Swift*

---

27    [1] That the declaration accompanying Kinsley's Application to Seal might provide some
28    authenticating information about Exhibit D does not cure this deficiency as to Exhibit D. The
       authenticating evidence must be filed unsealed along with the motion of which it is a part.

*Transp. Co. of Arizona*, No. 5:20-cv-00318-ODW (SPx), 2021 WL 5069585, at *4 (C.D. Cal. May 20, 2021).   Here, Kinsley asks the Court to simply accept that these 111 pages of indecipherable data somehow support the conclusion that the figure found at the top-right corner of the first page is the number that represents National's total sales of infringing masks.  The Court will not do so.  Kinsley must find a way to properly distill this information or otherwise present it to the Court in a meaningful way.  The Court now provides Kinsley an opportunity to do so, as explained below.

**3.    Application to Seal Exhibit D**

Kinsley seeks an order permitting it to file Exhibit D under seal.  (Pl.'s Appl. Leave File Under Seal, ECF No. 195.)   Given that Exhibit D is insufficient as evidence, Kinsley's request to seal it is moot.   However, to avoid confusion and clarify that the sealed materials remain sealed, the Court simply **STRIKES** the Application to Seal and the under-seal Exhibit D, leaving these materials both sealed and stricken in the case record.

That said, it is possible that Kinsley will seek to file additional sealed materials in support of its damages request.  Thus, the Court provides the following guidance and instructions to Kinsley regarding the legal and procedural requirements for obtaining default judgment on the basis of sealed documents.

*a.    Amazon Unaware of Application to Seal*

Kinsley claims that Exhibit D is "an abridged sales report received from Amazon.com, Inc. That [sic] has been filtered to show the sales made by National." (Pl.'s Appl. Leave File Under Seal 2, ECF No. 195.)  Kinsley claims Exhibit D should be filed under seal because "[t]he native file produced by Amazon was produced under a Confidential designation and may include sensitive sales information and limited customer information."  (*Id.*)

Under Central District Local Rule 79-5.2.2(b), "the Filing Party must confer with the person that designated the material confidential (the 'Designating Party') in an attempt to eliminate or minimize the need for filing under seal by means of

redaction" at least three days before seeking to file under seal the document with "confidential" material.  C.D. Cal. L.R. 79-5.2.2(b).  The Court also notes in this context that the fact "[t]hat the information may have been designated confidential pursuant to a protective order is not sufficient justification for filing under seal."  C.D. Cal. L.R. 79-5.2.2(a)(i).

It is not clear if the Local Rule 79-5.2.2(b) meet-and-confer requirement applies when the Designating Party has been dismissed.  But because the Court is deferring entry of judgment and requiring additional documentation on damages, the Court **ORDERS** as follows, to ensure all interested parties have proper notice.  If Kinsley wishes to file any further applications to seal materials filed in connection with its further demonstration of damages, and those materials have been designated as confidential by Amazon, Kinsley shall confer with Amazon pursuant to Central District Local Rule 79-5.2.2(b) and shall file with its application a declaration detailing the conference of counsel.  Moreover, Kinsley shall file a proof of service showing service of such an application to seal on Amazon.

### b.    Redaction Not "Narrowly Tailored"

Furthermore, there is a strong presumption against filing documents under seal. *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). Central District Local Rule 79-5.2.2(a)(i) provides that the party seeking to seal records must establish "good cause or compelling reasons why the presumption of public access in civil cases should be overcome."  In ruling on a motion to seal, "the court must balance the competing interests of the public and the party seeking to keep records secret."  *Harper v. Charter Commc'ns, LLC*, No. 2-19-CV-00902-WBS (DMCx), 2021 WL 600960, at *1 (E.D. Cal. Feb. 16, 2021).

Regardless of whether the designating party must show "compelling reasons," "good cause," or something in between, the Local Rules require redactions to be "narrowly tailored to seal only the sealable material."  C.D. Cal. L.R. 79-5.2.2(a)(ii). Here, the proposed redactions are not narrowly tailored to encompass confidential

information only.  In particular, it is not clear why redaction of the entire 111 pages of Exhibit D is necessary, nor does it clarify why specific line-item redactions would be insufficient to protect the confidential information at issue.  If filing additional materials under seal, both Kinsley and Amazon should bear in mind that parties seeking to seal entire documents bear a much heavier burden than those seeking to redact specific line items and leave the remainder of the document open to public inspection.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

## V.   CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** and **DEFERS IN PART** Kinsley's Renewed Motion for Entry of Default Judgment.  (ECF No. 194.)  The Court finds National Supply Distributors liable for trademark infringement, trademark counterfeiting, federal unfair competition, and unfair competition under California law.  Moreover, the Court hereby **PERMANENTLY ENJOINS** National Supply Distributors from (1) selling or offering for sale any facemask under the ASIN associated with Kinsley's SUNCOO-branded facemasks and (2) selling or offering for sale, through any sales channel of any type, any facemask whose packaging bears the SUNCOO word mark.

Moreover, Kinsley's Second Application to Seal and accompanying sealed declaration are both ordered **STRICKEN**.  (ECF Nos. 194, 195.)

The Court **ORDERS** Kinsley to file, by no later than **September 20, 2022**, additional declarations and other evidence on the issue of damages to remedy the deficiencies described herein.  Failure to timely provide sufficient additional materials will result in denial of the remainder of the Motion.

**IT IS SO ORDERED.**

August 30, 2022

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**